## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| LABORERS' PENSION FUND and | ) | |
| LABORERS' WELFARE FUND OF THE | ) | |
| HEALTH AND WELFARE DEPARTMENT | ) | |
| OF THE CONSTRUCTION AND GENERAL | ) | |
| LABORERS' DISTRICT COUNCIL OF | ) | |
| CHICAGO AND VICINITY, and JAMES S. | ) | |
| JORGENSEN, Administrator of the Funds, | ) | |
| Plaintiffs, | ) | Case No. 08 C 2565 |
| v. | ) | |
| | ) | Judge St. Eve |
| MIDWEST BRICKPAVING, INC., an | ) | |
| involuntarily dissolved Illinois corporation, and | ) | |
| JOEL ELFERING individually and d/b/a | ) | |
| MIDWEST BRICKPAVING, INC., | ) | |
| Defendants. | ) | |

## MOTION FOR ENTRY OF DEFAULT JUDGMENT IN SUM CERTAIN

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and James S. Jorgensen, Administrator of the Funds, (collectively "Funds"), by their attorney, Jerrod Olszewski, respectfully move for an Entry of Default Judgment in Sum Certain against Defendants Midwest Brickpaving, Inc., an involuntarily dissolved Illinois corporation, ("Company") and Joel Elfering, individually and d/b/a Midwest Brickpaving, Inc. ("Elfering"). In support of this Motion, Plaintiffs state as follows:

1.    Funds filed their Complaint on May 5, 2008 seeking to compel Company and Elfering to pay liquidated damages on late paid benefits reports for the months of April through September, 2007, to obtain a bond, and pay Funds' attorneys fees and costs.

2.      Summonses and Complaints were personally served upon Company's President on May 13, 2008 and Elfering on May 13, 2008. True and accurate copies of the Affidavits of Service are attached hereto as Exhibits A and B respectively.

3.      Company and Elfering have failed to file an Answer or otherwise plead. Accordingly, Company and Elfering are in default.

4.      As set forth in the Affidavit of Michael Christopher, filed contemporaneously herewith and attached hereto as Exhibit C, pursuant to the Agreement, and Funds' respective Agreements and Declarations of Trust, Funds are entitled to liquidated damages on the late paid April through September, 2007 benefits reports, and a bond. See Exhibit C, ¶¶ 1 through 6.

5.      Pursuant to Section 502(g)(2) of the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. § 1132(g)(2), Section 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. §185, federal common law, 805 ILCS 5/1 et seq., the Agreement, and Funds' respective Agreements and Declarations of Trust, Funds are entitled to judgment in the amount of $14,882.32 against Defendants Midwest Brickpaving, Inc., and Joel Elfering, individually and d/b/a Midwest Brickpaving, Inc., joint and severally, as follows:

a.      $13,567.72 in liquidated damages for the late paid April through September, 2007 benefits reports. See Exhibit C, ¶¶ 5 and 6.

b.      As set forth in the Declaration of Jerrod Olszewski filed contemporaneously herewith and attached hereto as Exhibit D, $1,314.60 in attorneys' fees and costs expended in this matter.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in

2

Plaintiffs' favor and against Defendants Midwest Brickpaving, Inc., and Joel Elfering, individually and d/b/a Midwest Brickpaving, Inc., joint and severally, in the amount of $14,882.32 as follows:

A. For $13,567.72 in liquidated damages for late paid April through September, 2007 benefits reports;

B. For $1,314.60 representing attorneys' fees and costs;

C. Ordering Defendants to obtain a surety bond in accordance with the collective bargaining agreement; and

D. Ordering Defendants to pay post judgment interest on all amounts due from the date of judgment until the judgment is satisfied.

June 5, 2008

Respectfully submitted,

Laborers' Pension Fund, et al.

By: /s/  Jerrod Olszewski

Patrick T. Wallace
Jerrod Olszewski
Christina Krivanek
Amy N. Carollo
Charles Ingrassia
Laborers' Pension and Welfare Funds
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**LABORERS' PENSION FUND; ET AL**

PLAINTIFF(S)

vs.

**MIDWEST BRICKPAVING, INC., JOEL ELFERING, INDIVIDUALLY
AND D/B/A MIDWEST BRICKPAVING, INC.**

DEFENDANT(S)

COURT DATE:

Case No.
**08 C 2565**

SERVICE DOCUMENTS:
**SUMMONS & COMPLAINT**

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On **May 13, 2008**, at **12:23 PM**, I served the above described documents upon **MIDWEST BRICKPAVING, INC.** as shown below:

**CORPORATE SERVICE** was made by leaving a true and correct copy of the documents with **JOEL ELFERING / PRESIDENT**, an officer, managing agent or authorized agent of the within named company.

Said service was effected at **18557 STATE LINE RD, ANTIOCH, IL 60002.**

**DESCRIPTION:**  Gender: **M**  Race: **WHITE**  Age: **47**  Hgt: **5'10"**  Wgt: **185**  Hair: **BLACK**  Glasses: **NO**

I declare under penalties of perjury that the information contained herein is true and correct.

**Patrick Richardson, Lic #: 117-001352
Judicial Attorney Services, Inc.
2100 Manchester Rd., Ste 900
Wheaton, IL 60187
(630) 221-9007**

SUBSCRIBED AND SWORN to before me this 14th day of May, 2008

NOTARY PUBLIC

OFFICIAL SEAL
PATRICIA M BRZEZICKI
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/15/12

CLIENT NAME:
**Laborers Pension and Welfare Funds***
**FILE #:**

ORIGINAL PROOF OF SERVICE

TRACKING #
38485



EXHIBIT
A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LABORERS' PENSION FUND; ET AL**<br><br>PLAINTIFF(S)<br><br>vs.<br><br>**MIDWEST BRICKPAVING, INC., JOEL ELFERING, INDIVIDUALLY AND D/B/A MIDWEST BRICKPAVING, INC.**<br><br>DEFENDANT(S) | COURT DATE:<br><br>Case No.<br>**08 C 2565**<br><br><br>SERVICE DOCUMENTS:<br>**SUMMONS & COMPLAINT** |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On **May 13, 2008**, at **12:23 PM**, I served the above described documents upon **JOEL ELFERING, INDIVIDUALLY AND D/B/A MIDWEST BRICKPAVING, INC.** as shown below:

**PERSONAL SERVICE** was made by leaving a true and correct copy to the within named individual, **JOEL ELFERING.**

Said service was effected at **18557 STATE LINE RD, ANTIOCH, IL 60002.**

**DESCRIPTION:**  Gender: **M**  Race: **WHITE**  Age: **47**  Hgt: **5'10"**  Wgt: **185**  Hair: **BLACK**  Glasses: **NO**

I declare under penalties of perjury that the information contained herein is true and correct.

*Patrick Richardson*

Patrick Richardson, Lic #: 117-001352
Judicial Attorney Services, Inc.
2100 Manchester Rd., Ste 900
Wheaton, IL 60187
(630) 221-9007

SUBSCRIBED AND SWORN to before me this 14th day of May, 2008

*Patricia M Brzezicki*

NOTARY PUBLIC

OFFICIAL SEAL
PATRICIA M BRZEZICKI
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/15/12

CLIENT NAME:
Laborers Pension and Welfare Funds*
FILE #:

ORIGINAL PROOF OF SERVICE

TRACKING #
38486



EXHIBIT
B
tabbies®

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and ) | |
| LABORERS' WELFARE FUND OF THE ) | |
| HEALTH AND WELFARE DEPARTMENT ) | |
| OF THE CONSTRUCTION AND GENERAL ) | |
| LABORERS' DISTRICT COUNCIL OF ) | |
| CHICAGO AND VICINITY, and JAMES S. ) | |
| JORGENSEN, Administrator of the Funds, ) | |
| Plaintiffs, ) | Case No. 08 C 2565 |
| v. ) | |
| ) | Judge St. Eve |
| MIDWEST BRICKPAVING, INC., an ) | |
| involuntarily dissolved Illinois corporation, and ) | |
| JOEL ELFERING individually and d/b/a ) | |
| MIDWEST BRICKPAVING, INC., ) | |
| Defendants. ) | |

### AFFIDAVIT OF MICHAEL CHRISTOPHER

MICHAEL CHRISTOPHER, being first duly sworn on oath, deposes and states as follows:

1.      I am a Field Representative employed by the Laborers' Pension Fund and the Laborers' Welfare Fund of the Construction and General Laborers' District Council of Chicago and Vicinity (hereinafter collectively referred to as the "Funds"), Plaintiffs in the above-referenced action. My responsibilities include oversight of the collection of amounts owed by Defendant Midwest Brickpaving, Inc. (hereinafter "Company"). This Affidavit is submitted in support of the Laborers' Funds' Motion for Entry of Default Judgment in Sum Certain. I have personal knowledge regarding the statements contained herein.

2.      On June 16, 2003, Company signed an Independent Construction Industry Collective Bargaining Agreement and Brick Pavers Addendum, ("Agreement") with the



EXHIBIT
C

Construction and General Laborers' District Council of Chicago and Vicinity ("District Council") and Laborers' Local Union No. 118. A true and accurate copy of the Agreement is attached hereto as Exhibit C-1. Pursuant to the terms of the Agreement, Company is bound to the terms of the relevant collective bargaining agreements incorporated by reference in the Agreement and Funds' respective Agreements and Declarations of Trust.

3.    Pursuant to agreement, the Funds have been duly authorized to act as collection agents on behalf of District Council for union dues owed to District Council.

4.    The Agreement and Funds' respective Agreements and Declarations of Trust, to which Company is bound, require that Company submit benefits reports and contribution payments by the tenth day of the following month. Payments which are not received within thirty days of this date are assessed liquidated damages in the amount of 20 percent of the principal amount of delinquent contributions. The Agreement and Funds' respective Agreements and Declarations of Trust also obligate Company to obtain a surety bond to insure future wages and fringes. A copy of the relevant portions of the collective bargaining agreement is attached as Exhibit C-2; a copy of the relevant portions of the Amended Agreement and Declaration of Trust creating the Laborers' Pension Fund is attached as Exhibit C-3; and a copy of the relevant portions of the Amended Health and Welfare Department of the Construction and General Laborers' District Council is attached as Exhibit C-4.

5.    Company submitted and paid its April, 2007 benefits report in the amount of $1,995.20 on August 3, 2007; May, 2007 benefits report in the amount of $19,141.45 on August 3, 2007; June, 2007 benefits report in the amount of $16,269.51 on December

2

7, 2007; July, 2007 benefits report in the amount of $2,538.21 on December 7, 2007;

August, 2007 benefits report in the amount of $13,453.90 on December 7, 2007; and

September, 2007 benefits report in the amount of $15,416.50 on December 7, 2007

thereby incurring liquidated damages on the Pension and Welfare portions of those

reports as follows:

| | |
|---|---|
| April, 2007 report | $ 393.60 |
| May, 2007 report | $ 3,776.10 |
| June, 2007 report | $ 3,202.29 |
| July, 2007 report | $ 513.24 |
| August, 2007 report | $ 2,648.10 |
| September, 2007 report | $ 3,034.39 |
| TOTAL | $13,567.72 |

A true and accurate copy of the Contractor Penalty History spreadsheet detailing the

foregoing is attached hereto as Exhibit C-5.

6.     Company has failed to obtain a surety bond in accordance with the

collective bargaining agreement.

FURTHER AFFIANT SAYETH NAUGHT.

Michael Christopher

Subscribed and sworn to before me
this 5th day of June, 2007.

Notary Public

OFFICIAL SEAL
ELIZABETH A. GALLAGHER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-13-2012

3



# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
### AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO
**701 BURR RIDGE PARKWAY • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8653**

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between _____ MIDWEST BRICK PAVING INC. _____ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092, together with any other Local Unions that may come within the Union's jurisdiction ("Local Union"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** The Employer, in response to the Union's request for recognition as the majority 9(a) representative of its Laborer employees, and the Union's offer to show evidence of its majority support, hereby recognizes the Union within Section 9(a) of the Act as the sole and exclusive collective bargaining representative for the employees now and hereinafter employed in the Laborer bargaining unit with respect to wages, hours and other terms and conditions of employment without the need for a Board certified election. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby provides its prior assignment of bargaining rights, if any. The Employer further voluntarily does not to assign such bargaining rights to any person, entity or association during the term of this Agreement or any extension thereof, without written approval from the Union. The Employer shall abide by this Agreement, and extensions hereof, provided that it employs at least one Laborer per year.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreements, as designated by the Union, between the Union and the Builders Association of Chicago and Vicinity, the Illinois Road Builders Association, the Underground Contractors Association, the Mason Contractors Association of Greater Chicago, the Concrete Contractors Association of Greater Chicago, G.D.C.R.M.C.A.W.C.C., the Chicago Demolition Contractors' Association, the Illinois Environmental Contractors Association, the Lake County Contractors Association, the Contractors Association of Will and Grundy Counties, the Fox Valley General Contractors Association, the Chicago Area Rail Contractors Association, the Chicago Scaffolding Association, and all other employer associations with whom the Union or its affiliated Local Unions has an agreement. If the applicable collective bargaining agreement(s) expire during the term of this Agreement, any revision or the right to strike shall also expire until a new agreement has been established, which shall be incorporated retroactively herein. It is further agreed that where the Employer works within the geographic jurisdiction of the Union's affiliated Local Unions that have negotiated an association agreement effective within the Local Union's jurisdiction, that the Local Union agreement is herein specifically incorporated into this Agreement and shall supersede the area-wide standard association agreements within the locality for which it is negotiated in the case of any conflict between them. Notwithstanding the foregoing, this Agreement supersedes all contrary terms in either the Local Union or area-wide association agreements.

3. **Dues Checkoff.** The Employer shall deduct from the wages of employees uniform working dues in the amount of 1.5% of gross wages, or such other amount as directed by the Union, and shall remit monthly to the designated Union office the same so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the month/pay period, not later than the tenth (10th) day of the month following the month for which said deductions were made. It is the parties' intention that these deductions comply with the provisions of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and such deductions be made only pursuant to written assignments from each employee on whose account such deductions are made, which shall not be irrevocable for a period of more than one year or beyond the termination date of the labor agreement, whichever occurs sooner.

4. **Work Jurisdiction.** The Agreement covers all work within the Union's work jurisdiction as set forth in the Union's Statement of Jurisdiction, receipt of which is hereby acknowledged, and as amended by the Union from time to time. The Statement of Jurisdiction is incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of this assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any work to be done at the site of construction, alteration, painting or repair of a building, structure or other work and coming within the above-described jurisdiction of the Union to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. Where the Employer contracts out or sublets any of the work coming within the above-described jurisdiction of the Union, it shall assume the obligations of any such subcontractor for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

5. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Fund), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust ("LECET"), and to all other designated Union-affiliated benefit and labor-management funds, and to become bound by and be considered a party to the Agreements and Declarations of Trust creating said Trust Funds as if it had signed the original copies of the Trust instruments and amendments thereto. The Employer ratifies and confirms the appointment of the Employer Trustees who shall, together with their successor Trustees, carry out the terms and conditions of the Trust instruments. The Employer further affirms that all prior contributions paid to the Welfare, Pension and Training Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the Trust Agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable agreements. Upon written notice to the Employer, the Union may increase the minimum surety bond to an amount not exceeding one hundred thousand dollars where necessary to ensure Employer compliance with its obligations.

Where Laborers covered by this Agreement perform work outside the Chicago area, the Employer shall, if covered under a local LIUNA-affiliated labor agreement in the area, contribute to the local fringe benefit funds in the amounts set forth in the local agreement. Otherwise, it shall remit all fringe benefit fund contributions in the amounts and to the funds as required under this Agreement.

6. **Wages and Industry Funds.** The Employer shall pay all the negotiated hourly wages, fringe benefit and industry fund contributions it is bound to pay under the applicable Collective Bargaining Agreements, including, where applicable, contributions to the Chicago-Area LECET and designated labor-management and industry advancement funds, except that no contributions shall be made to MCAF unless consented to and upon written direction from the Union. All additional wage rates, dues checkoff, and fringe benefits that are negotiated or become effective after May 31, 2001 shall be incorporated into this Agreement. The Union expressly reserves its sole right to allocate and apportion each annual total economic increase.

7. **Contract Enforcement.** All grievances arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment or underpayment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, subcontracting in violation hereof, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any lawful and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

8. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or purchaser, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph. The Union may strike to enforce the terms hereof.

9. **Termination.** This Agreement shall remain in full force and effect from June 1, 2001 (unless dated differently below) through May 31, 2006, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date of the desire to modify or amend this Agreement through negotiations. In the absence of termination by Employer and the Union agrees to be bound by the new area-wide negotiated agreements with the various Associations incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given as provided above.

10. **Execution.** The Employer acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The Employer further acknowledges receipt of a copy of the complete Union Agreements.

Dated: _____ JUNE 16 _____, 20 _03_

ACCEPTED:

Laborers' Local Union No. _____ 118 _____

By: _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
Frank Riley, President & Secretary-Treas.

By: _____
James P. Connolly, Business Manager

For Office Use Only:   CCA+

_____ MIDWEST BRICK PAVING, Inc.
(Employer)

36-4327697

JOEL ELFRING - PRESIDENT
(Print Name and Title)

_____
(Signature)

18559 STATELINE Rd.
(Address)

ANTIOCH ILL 60002
(City, State and Zip Code)

847-838-6550
(Telephone/Telefax)

WHITE - LOCAL UNION  •  CANARY - TRUST FUND  •  PINK - DISTRICT COUNCIL  •  GOLD - EMPLOYER

**EXHIBIT**
# C-1

## BRICK PAVERS ADDENDUM

The wages, benefits and other terms and conditions of employment set forth in the Independent Construction Industry Agreement and area-wide agreements incorporated therein shall apply to all commercial brick paving work. These terms and conditions shall also apply to all residential brick paving work except as modified below.

For purposes of this agreement, residential work shall be brick paving for single-family detached residences, or residential developments involving no more than five (5) single-family detached residences, and maintenance of existing brick paving not subject to any prevailing wage statute or ordinance, including but not limited to the Illinois Prevailing Wage Act and the Davis-Bacon Act. All other brick paving work shall be compensated as commercial work. Residential work shall not, under any circumstances, include work that is subject to any prevailing wage statute or ordinance as defined above.

Employees performing residential work as defined by this Addendum shall be classified as Residential Improvers and shall be compensated at not less than the hourly wage rates set forth below, but they shall not participate in any fringe benefits fund:

| Effective Date | Execution | June 1, 2003 | June 1, 2004 |
|---|---|---|---|
| New Hire | $8.70 | $9.20 | $9.80 |
| After 500 Hours | $9.20 | $9.75 | $10.30 |
| Foreman | $14.20 | $14.75 | $15.30 |

The foregoing rates are minimums. No employee earning more than the foregoing rates as of the date of execution of this Addendum shall suffer a reduction in wage rates after execution of this Addendum.

The contractor shall deduct working dues from the wages of employees performing residential work as defined by this Addendum in the amount of twenty cents ($.20) per hour for each hour worked or such other amount as determined by the Union.

The contractor is responsible for maintaining daily logs showing all hours worked on residential work and commercial work, and all employees covered by this Addendum shall sign the daily log for residential work and commercial work showing the address(es) of the project(s). The contractor shall immediately produce these logs and all permits and drawings upon the Union's request to verify the nature of the work. All work that is not appropriately documented as set forth in this paragraph shall be deemed and compensated as commercial work.

If the contractor violates any provision of this Addendum, it shall pay one thousand dollars ($1,000) per violation per day to persons or funds as determined by the Union.

The contractor acknowledges and accepts the facsimile signatures on this Addendum as if they were the original signatures.

Dated: _July 16_ , 20 03

ACCEPTED:

Laborers' Local Union _76_

By: _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
     Bruno Bilse, President & Secretary-Treas.

By: _____
     _____, Business Manager

For Office Use Only: _____

_Midwest Universal, Inc._
                    (Company)

FEIN No.: _36-463-96-79_

By: _Toni Fluidigan - President_
                    (Print Name and Title)

_____
(Signature)

_16205 Smolcrine Rd._
(Street)

_Batavia, IL  60012_
(City, State and Zip Code)

_241-779-4556_
(Telephone Number)

JUNE 1, 2001 TO MAY 31, 2006

# BUILDING AGREEMENT

between the

**BUILDERS ASSOCIATION OF GREATER CHICAGO**

**MASON CONTRACTORS ASSOCIATION
OF GREATER CHICAGO**

**LAKE COUNTY CONTRACTORS ASSOCIATION**

Represented by the

**MID-AMERICA REGIONAL BARGAINING
ASSOCIATION**

and the

**CONSTRUCTION AND GENERAL
LABORERS' DISTRICT COUNCIL
OF CHICAGO AND VICINITY**

1


EXHIBIT
C-2

lowing Bonding Contractors who follow this procedure will be relieved of any liability under this Paragraph 2.

**Paragraph 3.** The Employer shall promptly provide a list of all of its subcontractors on a job upon written request from the Union.

### Article VIII
### WAGES

**Paragraph 1.** The rates of wages exclusive of fringe benefits to be paid in this trade for the period June 1, 2001 to and including May 31, 2006, shall be as set forth below for the respective following classifications as further defined herein.

The wage rates include an increase of $1.65 per hour effective June 1, 2001 to May 31, 2002 for a wage rate of $26.65 per hour which includes the dues deduction. June 1, 2002 to May 31, 2003, $1.80 per hour increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. June 1, 2003 to May 31, 2004, $2.00 per hour increase to be allocated between wages and fringe benefits by the Union in its sole discretion. June 1, 2004 to May 31, 2005, $2.20 per hour increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. June 1, 2005 to May 31, 2006, $2.20 per hour increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. The foregoing allocations may include allocations to LECET.

For the economic increases listed above, the Union shall also have discretion to allocate to another fund(s) to be established, up to a maximum of thirty cents ($.30) per hour over the term of the Agreement (up to twelve cents ($.12) in the first year and up to eighteen cents ($.18) over the remaining years). The fund(s) shall indemnify and hold harmless Employers who have assigned their bargaining rights to a MARBA-represented Association for purposes of collective bargaining with the Union, and the MARBA-represented Associations party to this

14

mentation and operation of the fund(s), other than the obligation to contribute the designated amounts to the fund(s), and such indemnity and hold harmless shall include the payment of all reasonable costs and attorney's fees actually incurred on behalf of the employer. The Employer shall give prompt notice to the fund(s) of any claims asserted or suits filed that are subject to indemnification.

| CLASSIFICATION | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 |
|---|---|---|---|---|---|
| Building Laborers . . . . . . . . | $26.65 | $1.80 | $2.00 | $2.20 | $2.20 |
| Fire BrickWork and Boiler Settler Laborers . . . . . . . . | 26.975 | | | | |
| Jackhammerman (On Firebrick Work Only) . . . . . | 26.925 | | | | |
| Boiler Setter Plastic Laborers . . . . . . . . . . . . . | 27.10 | | | | |
| Chimmeney Laborers (Over 40 Feet) . . . . . . . . . | 26.75 | | | | |
| Chimney on Firebrick . . . . . | 27.00 | | | | |
| Scaffold Laborers . . . . . . . . | 26.75 | | | | |
| Caisson Diggers . . . . . . . . | 27.00 | | | | |
| Jackhammerman . . . . . . . . | 26.875 | | | | |
| Power Driven Concrete Saws, Other Power Equipment . . . . . . . . . . . . | 26.875 | | | | |
| Stone Derrickman and Handlers . . . . . . . . . . . . | 26.85 | | | | |
| Fireproofing and Fire Shop Laborers . . . . . . . . . | 26.65 | | | | |
| Well Point System Men . . . . | 27.00 | | | | |
| Pumps for Dewatering, other Unclassified Laborers . . . . . . . . . . . . | 26.65 | | | | |
| Windlass and Capstan Person . . . . . . . . . . . . . | 26.80 | | | | |
| Cement Gun Nozzle Laborers (Gunite) . . . . . . | 26.80 | | | | |
| Cement Gun Laborers . . . . . | 26.725 | | | | |

to be allocated between wages and fringe benefits by the Union in its sole discretion. (See above paragraph)

15

Plaster Laborers .................. 26.65
Apprentice (1st 6 Months) ......... 15.99
Apprentice (2nd 6 Months) ........ 18.655
Apprentice (3rd 6 Months) ........ 21.32
Apprentice (4th 6 Months) ......... 23.985
Apprentice (5th 6 Months) ......... 26.65

Sub-Foremen shall receive $.45 premium wages over and above top Laborers' Scale under his supervision.

Building Labor Foremen, General Foremen and Superintendents shall receive $.75 premium wages over and above top Laborers' Scale under his supervision.

**Dosimeter Use** A premium of One ($1.00) Dollar per hour shall be paid to any Laborer required to work with a dosimeter used for monitoring nuclear exposure or with any similar instrument or measuring device.

**Power Pac** When a Laborer uses a power driven piece of equipment he shall be paid the rate of pay of the tool at the end of the power pac.

**Asbestos Use** For the period June 1, 2001 through May 31, 2002, a premium of fifteen cents ($.15) per hour shall be paid to any Laborer required to work with asbestos who is a certified asbestos Laborer licensed by the State of Illinois as an Asbestos Abatement worker. Thereafter, no premium shall be paid.

**Paragraph 2. WELFARE:** Beginning the period from June 1, 2001 to May 31, 2002, the Employer agrees to make Health and Welfare contributions of $3.45 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages herein stipulated. This $3.45 per hour shall be paid to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity or a designated appointee at the end of each month.

That for the periods June 1, 2002 to May 31, 2003; June 1, 2003 to May 31, 2004; June 1, 2004 to May 31, 2005; June 1, 2005 to May 31, 2006; that on May 1 of

16

each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training to be allocated from the economic package for that year. (See Article VIII, Paragraph 1)

The Employer agrees to bound by the Agreements and Declarations of Trust establishing the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, as well as any amendments thereto.

**Paragraph 3. PENSION:** Beginning June 1, 2001 the Employer agrees to make a pension contribution of $2.65 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages and welfare payments herein stipulated. This $2.65 per hour shall be paid to the Laborers' Pension Fund or to a designated appointee at the end of each month.

That for the periods June 1, 2002 to May 31, 2003; June 1, 2003 to May 31, 2004; June 1, 2004 to May 31, 2005; June 1, 2005 to May 31, 2006; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training to be allocated from the economic package for that year. (See Article VIII, Paragraph 1)

The Employer agrees to bound by the Agreements and Declarations of Trust establishing the Laborers' Pension Fund, as well as any amendments thereto.

The parties agree that the Employer shall make lump sum contributions to employee fringe benefit accounts, administered by the Trustees on behalf of each employee. It is further agreed that such contribution shall be accompanied by a breakdown of payment according to appropriate benefits.

The Trustees of the Welfare Fund and the Trustees of the Pension Fund shall, among other things, have authority to determine the type and amount of benefits to be

17

provided in each of said funds, the eligibility rules governing entitlement to benefits, and whether and to what extent benefits are to be provided for covered Employees.

The failure of the Employer to contribute to the said Welfare or Pension Funds when the same is established, as provided herein, shall for the purposes of the remedies the Union may pursue, be deemed the same as the failure of the Employer to pay wages, and the Union shall be permitted to remove workers whom they represent for non-payment of such contributions, anything to the contrary in this Agreement notwithstanding.

A grace period of thirty (30) days shall be granted for Employers to submit reports and contributions as provided. Said reports and contributions not received during this grace period shall be assessed liquidated damages amounting to ten (10%) percent of the amount of the contributions which are owed. The Employer acknowledges that the liquidated damages shall be used to defer administrative costs arising by said delinquency and acknowledges the costs to be actual and substantial, though difficult to ascertain. However, the Employer acknowledges these costs to be at a minimum of ten (10%) percent, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions shall bear interest at a maximum legal rate of interest per annum from the due date until they are paid.

Further, in the event the Trustees refer the account to legal counsel for collection, the delinquent Employer shall be liable for reasonable attorneys' fees, and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc.

Reasonable attorneys' fees shall mean: All reasonable attorneys' fees in the amounts for which the Trustees become legally bound to pay, including recovery of liquidated damages, interests, audit costs, filing fees, and any other expenses incurred by the Trustees.

18

The Trustees of the aforementioned Welfare and Pension Funds and the Union shall have the authority to audit the books and records of a participating Employer, either directly or through their authorized representative, whenever such examination is deemed necessary for the purpose of compliance with the provisions of this Agreement, including the obligation to remit Union Dues under Article VI.

Each participating Employer shall make its books and records available to the Trustees for such purpose. In the event the audit discloses that the Employer, during the period of the audit, has underpaid its contributions and/or wages, the Employer shall be liable for the costs of the examination, including but not limited to, audit fees and reasonable attorneys' fees. The Trustees' authority to waive any costs shall be governed by the terms of the Trust Agreement.

Section 415 Excess Benefit Fund. A Section 415 Excess Benefit Fund shall be established for the purpose of providing alternative benefit to any employees of the Employer who become unable to receive the entire amount of the accrued pension benefits to which they would be entitled under one or more of the pension plans sponsored by their Employer because of limitations established by Section 415 of the Internal Revenue Code. The Employer may be required and directed by the Board of Trustees of the Excess Benefit Fund to contribute a portion of its agreed-upon "pension" contribution to the Section 415 Excess Benefit Fund and shall not increase the Employer's cost beyond the amount that the Employer is obligated to contribute to the Laborers' Pension Fund and that the funding of the Section 415 Excess Benefit Fund shall be fully tax deductible to the Employer for Federal Income Tax purposes. The Employer hereby agrees that the Board of Trustees of any such Section 415 Excess Benefit Fund shall be authorized to determine each year the amount that will be contributed by the Employer and the amount to be credited to the account of any eligible retiree for payment in lieu of

19

accrued benefits that would exceed the limits set by Section 415 of the Internal Revenue Code.

**Paragraph 4. SUPERVISORS:** To the extent permissible by the Internal Revenue Service or any Federal Act, and for the purposes of Paragraphs 2 and 3 of Article VIII of this Agreement only, the bargaining unit shall also include those persons in the employ of an Employer who are supervisors, as defined in the Labor Management Relations Act, as amended; and who at one time were Employee members of the bargaining unit herein on whose behalf contributions were required to be made to the trust funds described in the aforesaid Paragraph 2 and 3 of Article VIII hereof.

### Article IX
### BONDING

**Paragraph 1.** All Employers shall procure, carry and maintain a surety bond in form and amount satisfactory to the Union, but not less than in the principal sum of $5,000.00, to guarantee payment of wages, Pension and Welfare Trust contributions, during the term of this Agreement.

**Paragraph 2.** If the Employer employs between seven (7) and ten (10) Laborers, the surety bond shall be increased to $15,000. If the Employer employs between eleven (11) and twenty (20) Laborers, the surety bond shall be increased to $25,000. If the Employer employers twenty-one (21) to forty (40) Laborers, the surety bond shall be increased to $35,000. If the Employer employs forty-one (41) or more Laborers, the surety bond shall be increased to $45,000.

**Paragraph 3.** The Employer shall give notice to the Union and the appropriate Fund Office in writing not later than ten (10) days after the occurrence of any of the following events relating to the Employer, occurring after the date hereof:

(a) Formation of Partnerships;

(b) Termina

(c) Change
operatio

(d) Change

(e) Incorpo

(f) Dissolut

(g) Name a

(h) Admissi
tion op
unit.

Paragraph
WEST CONST
MENT FUND
"Industry Fund"
its sole discretio
this Agreement,
hour worked fo
covered by this

Each Emp
Laborers-Emplo
("LECET"), the
worked for the
ered by this Agr

Each Emp
Council Labor
("LDC/LMCC"
each hour wor
Employees cove

Each cont
hour for each h
by this Agreem
Corporation ("

20

e limits set by
e.

e extent permis-
any Federal Act,
3 of Article VIII
unit shall also
a Employer who
or Management
one time were
unit herein on
d to be made to
Paragraph 2 and

ocure, carry and
ount satisfactory
principal sum of
ges, Pension and
le term of this

mploys between
ty bond shall be
mploys between
the surety bond
oloyer employers
the surety bond
mployer employs
ety bond shall be

ive notice to the
e in writing not
nce of any of the
r, occurring after

(b) Termination of business;

(c) Change of name commonly used in business operation;

(d) Change in form of business organization;

(e) Incorporation of business;

(f) Dissolution of corporation;

(g) Name and business organization of successor;

(h) Admission to or withdrawal from any association operating as a multi-employer bargaining unit.

## Article X
## INDUSTRY FUND

**Paragraph 1.** Each Employer shall pay into the MIDWEST CONSTRUCTION INDUSTRY ADVANCEMENT FUND (hereinafter sometimes referred to as the "Industry Fund"), or such other fund as MARBA may in its sole discretion designate at any time during the term of this Agreement, the amount of six cents ($.06) for each hour worked for the Employer by those of his Employees covered by this Agreement.

Each Employer shall pay into the Chicago-Area Laborers-Employers Cooperation and Education Trust ("LECET"), the amount of five cents ($.05) for each hour worked for the Employer by those of his Employees covered by this Agreement.

Each Employer shall pay into the Laborers' District Council Labor Management Cooperation Committee ("LDC/LMCC"), the amount of twelve cents ($.12) for each hour worked for the Employer by those of his Employees covered by this Agreement.

Each contractor shall contribute one cent ($.01) per hour for each hour worked by his/her employees covered by this Agreement to the Construction Industry Service Corporation ("CISCO"), a not for profit corporation.

21

Case 1:08-cv-02563   Document 10-3   Filed 05/12/08   Page 21 of 20

**Paragraph 2.** The Employer agrees to be bound by the Agreement and Declaration of Trust establishing the Industry Fund, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of said Industry Fund pursuant to said Agreement and Declaration of Trust and amendments thereto. The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the LECET and LDC/LMCC, as well as any amendments thereto.

**Paragraph 3.** Inasmuch as the existence and utilization of this Industry Fund should result in increased construction and, therefore, in increased construction job opportunities for Employees, the Union agrees to cooperate in assuring that the contributions required by this Article are in fact made by Employers bound by this Agreement.

## SAFETY FUND

**Paragraph 4.** For the period June 1, 2001 to May 31, 2006, each Employer shall contribute one cent ($.01) per hour for each hour worked by his employees covered by this Agreement to the Chicagoland Construction Safety Council, a not for profit corporation.

## Article XI
## PARTICULAR WORK RULES AND CLARIFICATION OF CONDITIONS

**Paragraph 1.** (a) Building Laborers' scale shall apply to all work performed by the Laborers except as specifically classified.

(b) Boiler Setter Laborers will include all work of handling solid refractory materials and also fire brick work in boiler setting, open hearth, furnace, blast furnace, soaking pits, tanks, dust catchers, coke oven batteries, furnace chimneys and stacks, including cleanup work on the above services.

(c) Boiler Setter Plastic Laborers applies to work of actually installing plastic, in connection with the boiler

22

# RESTATED AGREEMENT

### AND

# DECLARATION OF TRUST

#### CREATING

# LABORERS'
# PENSION FUND

With Amendments Through
May 31, 2002



(b)     To enforce the provisions of the Pension Plan and the rules and regulations adopted by the Trustees in a uniform manner with respect to individuals similarly situated.

(c)     To determine questions arising under the Pension Plan or this Agreement, including the power to determine the rights of Employees and their Beneficiaries, and their respective benefits, and to remedy ambiguities, inconsistencies or omissions.

## ARTICLE VII

## FUNDING PENSION PLAN BENEFITS

Section I.     IN GENERAL.  In order to fund the benefits provided under the Pension Plan, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees at the times required by that agreement.  The rate of contributions shall be determined by the applicable Collective Bargaining Agreement or Participation Agreement, together with any amendments, supplements or modifications thereto.  Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be the same as the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union which covers Employees performing similar work.  No

Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the  provisions of a Collective Bargaining Agreement or Participation Agreement  and any such contract or agreement shall be null and void.  It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer has entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation  Agreement.  All contributions shall be paid in the manner and form required by the Trustees.

Section 2.    DEFAULT IN PAYMENT OF CONTRIBUTIONS. Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments.  The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity.  Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment. The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed. All Employers party to or otherwise bound by this Agreement acknowledge that the

liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10%, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions and any payments owed by an Employer pursuant to an installment agreement, shall bear interest up to the prime rate of interest plus two points charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied. The Trustees are hereby given the power and authority to delegate the collection of contributions to a Collection Committee, which, in its discretion, may assess a lesser or greater amount or waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Fund. The Collection Committee may include trustees of the Laborers' Welfare Fund as members of the Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including court fees, audit fees, investigative costs, etc. The term "reasonable attorneys' fees" as used herein shall mean all

attorneys' fees in the amounts for which the Trustees become legally obligated including recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority, in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees the Employer shall furnish the Trustees, in lieu of any cash deposit, a bond in an amount not less than Five Thousand Dollars ($5,000.00) or in an amount consistent with the terms of the current collective bargaining agreements. In the event an Employer is repeatedly delinquent in its contribution payments to the Pension Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current collective bargaining agreements, in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency. The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3.    REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS. The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such

other information as the Trustees may reasonably require in connection with the administration of the Trust and Pension Plan. The Trustees may at any time have an audit made by an independent certified public accountant or its representatives of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures developed and communicated by the Administrator from the beginning of such Employer's participation in the Pension Fund forward unless given written authorization by the Administrator upon request to destroy said record. The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive. Attached hereto as Addendum A are the current collection policies concerning Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

## ARTICLE VIII

## FILING CLAIMS AND REVIEW OF DENIALS OF CLAIM

Section 1.    FILING OF A CLAIM.    Claims for the payment of any benefits provided by the Pension Plan shall be filed, in writing, in accordance with the Rules and Regulations set forth in Article 7 of the Pension Plan.

## ADDENDUM A

## RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS
## AND PRODUCED FOR AUDITS

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1.   Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2.   Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3.   Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4.   Cash disbursement journals and general ledgers.

5.   Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6.   Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7.   Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8.   Daily time records filed by employees or supervisors.

9.   Source documents and lists of job codes and equipment codes.

10.   Certified payrolls for public sector jobs where such payrolls are required.

11.   Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

12.  Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13.  If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above.  However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above.  In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.  The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1

1.  Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2.  Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union. In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records. The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof. Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3.  When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied. When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer. If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept. Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct. All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4.  An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR SCHEDULING OF AUDITS

As Adopted by The Boards of Trustees
Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

## AUDIT PERIOD

1. **New Employers**. New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. **Honor Roll Employers.** Employers with a history of adequate record keeping and timely, payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. **Other Contributing Employers**. Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years.

4. **Employers Subject to Special Audits**. At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. **New Employers**. If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. **Honor Roll Employers**. Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. **Other Contributing Employers**. Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

\* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.

AMENDMENT TO THE
RESTATED AGREEMENT AND DECLARATION OF TRUST
CREATING LABORERS' PENSION FUND

WHEREAS, Article XII of the Restated Agreement and Declaration of Trust ("Trust Agreement") of the Laborer's Pension Fund (the "Fund") provides that the Board of Trustees have the authority to amend the Trust Agreement;

WHEREAS, Article IV of the Fund's Trust Agreement sets forth the powers and duties of the Trustees;

WHEREAS, the Trustees have an obligation to protect the interests of the Plan's Participants and to protect the assets of the Fund;

WHEREAS, the Trustees are aware of situations in which contributing Employers have ceased business operations leaving a large indebtedness to the Fund without a reasonable likelihood of the Fund collecting such delinquent contributions;

WHEREAS, the individual officers and owners of some Employers have secured jobs knowing that they will not comply with their legal obligations to the Fund by keeping accurate records of their laborer employees' employment and make all the required contributions to the Fund; and

WHEREAS, such illegal conduct causes substantial losses to the Fund and deprives Employers who comply with its obligations to the Fund of opportunities to secure employment for their laborer employees; and

WHEREAS, the individual officers, partners or owners of some contributing Employers have used various entities to avoid liability to the Fund for contributions that would otherwise be due and then created new companies in order to continue to operate using such illegal practices;

WHEREAS, in some instances such individual officers or owners have accepted employment as a supervisor or manager with another contributing Employer and been responsible for causing such Employers to fail to comply with their obligations to keep accurate records and make all required contributions;

WHEREAS, the Trustees have determined that certain individuals and entities (as hereinafter defined "Deadbeat Employers") who engage in these practices willfully or with reckless disregard for their legal obligations or with repeated incompetence at the expense of their employees and the Fund have caused the Fund to incur large financial losses and employees to lose benefit coverage for which they had worked;

WHEREAS, the Trustees have concluded that such Deadbeat Employers' practices result in unfair competition for other contributing Employers often with the result of enriching

1

themselves and depriving lawful Employers of needed work, and depriving the Fund's participants of benefits;

WHEREAS, it is the desire of the Trustees to amend the Trust Agreement in order expressly to provide that the Fund may impose appropriate protective financial requirements on any Employer that is owned by or that hires a Deadbeat Employer in a managerial or supervisory role;

NOW THEREFORE, the undersigned Trustees of the Fund, pursuant to the authority of Article XII of the Restated Agreement and Declaration of Trust, do hereby adopt the following Amendment to the Restated Agreement and Declaration of Trust effective as of August 1, 2006:

I.

**The following is added as an additional Paragraph under Article I, "Certain Definitions", Section 2, "Employer":**

"A "Deadbeat Employer" is defined as any entity or individual (including, but not limited to a corporation, partnership, or sole proprietorship and its respective officers, partners or owners) who have, or previously had in the last 10 years, incurred substantial liability to the Fund for delinquent contributions and then ceased operations or became insolvent, without satisfying such substantial liability and without any reasonable likelihood of paying the amounts due to the Fund. For purposes of this Section, substantial liability shall not be less than $30,000."

II.

**The following is added as Section (4) to Article VII, "Funding Pension Plan Benefits":**

"Section 4. ADDITIONAL REQUIREMENTS FOR DEADBEAT EMPLOYERS.

(a)    **EMPLOYER OWNED BY DEADBEAT EMPLOYER.** Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer that is owned, whether in whole or in part, by a Deadbeat Employer shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(b)    **EMPLOYER OPERATED BY DEADBEAT EMPLOYER.** Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer whom the Trustees reasonably believe employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of

the Employer or contribution obligations of the Employer to the Fund shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(c) <u>PROCEDURES BY WHICH AN EMPLOYER MAY AVOID LIABILITY UNDER THIS SECTION.</u> The Fund shall send written notice (the "Notice") to any Employer whom the Trustees reasonably believe, is owned, in whole or part by a Deadbeat Employer, or who employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations to the Fund. The Notice will provide the Employer with a date certain, no less than 30 days after the date of transmittal of the Notice to the Employer, to provide evidence, satisfactory to the Trustees, that the Employer should not be subject to the provisions of subsections (a) or (b), as applicable, as the Employer deems appropriate in order to avoid liability under this Section. Any Employer, following the date set forth in the Notice from the Fund, who does not provide such satisfactory evidence to the Trustees, shall be subject to the obligations set forth in subsections (a) or (b), as applicable. Any Employer who employs an officer or owner of a Deadbeat Employer in a non-managerial or non-supervisory position or in any other position in which the Deadbeat Employer does not exercise any control over the assets of the Employer or contribution obligations to the Fund will not be considered a successor employer and will not be required to post the bond described in this Section.

(d) <u>MISCELLANEOUS PROVISIONS.</u> The bond referenced in this Section shall be in addition to any other bond requirements set forth in the Written Agreement. The Trustees shall have discretion to waive the additional bond requirement or to reduce the amount of the bond, when, based on the specific circumstances, the Trustees determine it is reasonable to do so. Whenever a family member of a Deadbeat Employer purportedly has an ownership interest of an Employer that employs an officer, partner or owner of a Deadbeat Employer, there will be a rebuttable presumption that the Deadbeat Employer has substantial control over the assets of that Employer. "

<u>III.</u>

<u>Except as hereinbefore amended, the Trust Agreement shall remain in full force and effect in accordance with its terms.</u>

IN WITNESS WHEREOF, the undersigned Trustees have caused this Amendment to be executed on the dates appearing opposite their respective names.

| | | | |
|---|---|---|---|
| *Charles Cohen* | 9-18-06 | *Joseph Coconato* | 9/13/06 |
| **CHARLES COHEN** | **DATE** | **JOSEPH COCONATO** | **DATE** |
| *Alan C. Esche* | 9/18/06 | *James P. Connolly* | 9/18/06 |
| **ALAN ESCHE** | **DATE** | **JAMES P. CONNOLLY** | **DATE** |
| *Robert G. Krug* | 9/18/06 | *J. Michael Lazzaretto* | 9/18/06 |
| **ROBERT G. KRUG** | **DATE** | **J. MICHAEL LAZZARETTO** | **DATE** |
| *Richard E. Grabowski* | 9/18/06 | *Frank Riley* | 9/18/06 |
| **RICHARD E. GRABOWSKI** | **DATE** | **FRANK RILEY** | **DATE** |
| *David H. Lorig* | 9/18/06 | *Larry Wright Jr.* | 9/18/06 |
| **DAVID H. LORIG** | **DATE** | **LARRY WRIGHT** | **DATE** |
| *Gary Lundsberg* | 9/18/06 | *Jeff M. Ziemann* | 9-18-06 |
| **GARY LUNDSBERG** | **DATE** | **JEFF ZIEMANN** | **DATE** |

# RESTATED AGREEMENT AND DECLARATION OF TRUST OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

Restated through
July 1, 2003



EXHIBIT
C-4

## ARTICLE VI
## EMPLOYER CONTRIBUTIONS

**Section 1.  IN GENERAL.**  In order to fund the Benefits provided for by this Agreement, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees pursuant to regulations established by the Trustees at the times required by that agreement.  The rate of contributions shall be determined by the applicable Collective Bargaining Agreements or Participation Agreements, together with any amendments, supplements or modifications thereto.  Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation Agreement or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be not less than the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union having jurisdiction over the geographic area in which the covered Employees perform their work.  No Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the foregoing provisions of this Section and any such contract or agreement shall be null and void.  It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer had entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement.  All contributions shall be paid in the manner and form required by the Trustees.

**Section 2.  DEFAULT IN PAYMENT OF CONTRIBUTIONS.**  Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments.  The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity.  Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment.  The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed.  All Employers party to or otherwise bound by this Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10% waiving the necessity of any additional proof thereof.  In addition, the delinquent contributions and any payments by the Employer pursuant to an installment agreement, shall bear interest, up to the prime rate plus two points, charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied.  The Trustees are hereby given the power and authority, in their discretion, to assess a lesser amount or to waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee of the Board of Trustees and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Welfare

Fund. The Collection Committee may include trustees of the Laborers' Pension Fund as members of such Collection Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, or refuses to provide the records required to be kept by contributing employers or submit to an audit, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including but not limited to, court fees, audit fees and investigative costs. The term "reasonable attorneys' fees" as used herein shall mean all attorneys' fees in the amounts for which the Trustees become legally obligated for actions seeking delinquent contributions, to compel an audit, or for recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), or in an amount consistent with the terms of the current Collective Bargaining Agreement to which the Employer is subject. In the event an Employer is repeatedly delinquent in its contribution payments to the Welfare Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current Collective Bargaining Agreements in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency. The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS. The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may at any time have an audit made by an independent accounting firm of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures from the beginning of such Employer's participation in the Trust until given written authorization by the Administrator, upon request, to destroy said records. The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive. Attached hereto as Addendum A are the current collection policies concerning the Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

## ADDENDUM A

## RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS
## AND PRODUCED FOR AUDITS

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1.  Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2.  Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3.  Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4.  Cash disbursement journals and general ledgers.

5.  Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6.  Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7.  Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8.  Daily time records filed by employees or supervisors.

9.  Source documents and lists of job codes and equipment codes.

10.  Certified payrolls for public sector jobs where such payrolls are required.

11.  Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

12. Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13. If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above. However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above. In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced. The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1

1. Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2. Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union. In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records. The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof. Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3. When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied. When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer. If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept. Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct. All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4. An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR SCHEDULING OF AUDITS

As Adopted by The Boards of Trustees
Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

## AUDIT PERIOD

1. **New Employers**. New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. **Honor Roll Employers.** Employers with a history of adequate record keeping and timely, payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. **Other Contributing Employers.** Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years.

4. **Employers Subject to Special Audits**. At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. **New Employers**. If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. **Honor Roll Employers**. Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. **Other Contributing Employers**. Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.

AMENDMENT TO THE
RESTATED AGREEMENT AND DECLARATION OF TRUST
OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND
GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

WHEREAS, Article XI of the Restated Agreement and Declaration of Trust ("Trust Agreement") provides that the Board of Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Fund") have the authority to amend the Trust Agreement;

WHEREAS, Article IV of the Fund's Trust Agreement sets forth the powers and duties of the Trustees;

WHEREAS, the Trustees have an obligation to protect the interests of the Plan's Participants and to protect the assets of the Fund;

WHEREAS, the Trustees are aware of situations in which contributing Employers have ceased business operations leaving a large indebtedness to the Fund without a reasonable likelihood of the Fund collecting such delinquent contributions;

WHEREAS, the individual officers and owners of some Employers have secured jobs knowing that they will not comply with their legal obligations to the Fund by keeping accurate records of their laborer employees' employment and make all the required contributions to the Fund; and

WHEREAS, such illegal conduct causes substantial losses to the Fund and deprives Employers who comply with its obligations to the Fund of opportunities to secure employment for their laborer employees; and

WHEREAS, the individual officers, partners or owners of some contributing Employers have used various entities to avoid liability to the Fund for contributions that would otherwise be due and then created new companies in order to continue to operate using such illegal practices;

WHEREAS, in some instances such individual officers or owners have accepted employment as a supervisor or manager with another contributing Employer and been responsible for causing such Employers to fail to comply with their obligations to keep accurate records and make all required contributions;

WHEREAS, the Trustees have determined that certain individuals and entities (as hereinafter defined "Deadbeat Employers") who engage in these practices willfully or with reckless disregard for their legal obligations or with repeated incompetence at the expense of their employees and the Fund have caused the Fund to incur large financial losses and employees to lose benefit coverage for which they had worked;

WHEREAS, the Trustees have concluded that such Deadbeat Employers' practices result in unfair competition for other contributing Employers often with the result of enriching themselves and depriving lawful Employers of needed work, and depriving the Fund's participants of benefits;

WHEREAS, it is the desire of the Trustees to amend the Trust Agreement in order expressly to provide that the Fund may impose appropriate protective financial requirements on any Employer that is owned by or that hires a Deadbeat Employer in a managerial or supervisory role;

NOW THEREFORE, the undersigned Trustees of the Fund, pursuant to the authority of Article XII of the Restated Agreement and Declaration of Trust, do hereby adopt the following Amendment to the Restated Agreement and Declaration of Trust effective as of August 1, 2006:

## I.

**The following is added as an additional Paragraph under Article I, "Certain Definitions", Section 2, "Employer":**

"A "Deadbeat Employer" is defined as any entity or individual (including, but not limited to a corporation, partnership, or sole proprietorship and its respective officers, partners or owners) who have, or previously had in the last 10 years, incurred substantial liability to the Fund for delinquent contributions and then ceased operations or became insolvent, without satisfying such substantial liability and without any reasonable likelihood of paying the amounts due to the Fund. For purposes of this Section, substantial liability shall not be less than $30,000."

## II.

**The following is added as Section (4) to Article VI, "Employer Contributions":**

"Section 4.  ADDITIONAL REQUIREMENTS FOR DEADBEAT EMPLOYERS.

(a)    EMPLOYER OWNED BY DEADBEAT EMPLOYER.  Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer that is owned, whether in whole or in part, by a Deadbeat Employer shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(b)    EMPLOYER OPERATED BY DEADBEAT EMPLOYER.  Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer whom the Trustees reasonably believe employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of

the Employer or contribution obligations of the Employer to the Fund shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(c)    PROCEDURES BY WHICH AN EMPLOYER MAY AVOID LIABILITY UNDER THIS SECTION.  The Fund shall send written notice (the "Notice") to any Employer whom the Trustees reasonably believe, is owned, in whole or part by a Deadbeat Employer, or who employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations to the Fund.  The Notice will provide the Employer with a date certain, no less than 30 days after the date of transmittal of the Notice to the Employer, to provide evidence, satisfactory to the Trustees, that the Employer should not be subject to the provisions of subsections (a) or (b), as applicable, as the Employer deems appropriate in order to avoid liability under this Section.  Any Employer, following the date set forth in the Notice from the Fund, who does not provide such satisfactory evidence to the Trustees, shall be subject to the obligations set forth in subsections (a) or (b), as applicable.  Any Employer who employs an officer or owner of a Deadbeat Employer in a non-managerial or non-supervisory position or in any other position in which the Deadbeat Employer does not exercise any control over the assets of the Employer or contribution obligations to the Fund will not be considered a successor employer and will not be required to post the bond described in this Section.

(d)    MISCELLANEOUS PROVISIONS.  The bond referenced in this Section shall be in addition to any other bond requirements set forth in the Written Agreement. The Trustees shall have discretion to waive the additional bond requirement or to reduce the amount of the bond, when, based on the specific circumstances, the Trustees determine it is reasonable to do so. Whenever a family member of a Deadbeat Employer purportedly has an ownership interest of an Employer that employs an officer, partner or owner of a Deadbeat Employer, there will be a rebuttable presumption that the Deadbeat Employer has substantial control over the assets of that Employer. "

III.

Except as hereinbefore amended, the Trust Agreement shall remain in full force and effect in accordance with its terms.

3

IN WITNESS WHEREOF, the undersigned Trustees have caused this Amendment to be executed on the dates appearing opposite their respective names.

| | | | |
|---|---|---|---|
| _(signature)_ | | _(signature)_ | 9/19/06 |
| **CHARLES J. GALLAGHER** | **DATE** | **JAMES P. CONNOLLY** | **DATE** |
| _(signature)_ | 9/19/06 | _(signature)_ | 9/19/06 |
| **ALAN ESCHE** | **DATE** | **RANDY DALTON** | **DATE** |
| _(signature)_ | 9/19/06 | _(signature)_ | 9-19-06 |
| **RICHARD E. GRABOWSKI** | **DATE** | **MARTIN FLANAGAN** | **DATE** |
| _(signature)_ | 9/19/06 | _(signature)_ | 9/19/06 |
| **DAVID H. LORIG** | **DATE** | **LIBERATO NAIMOLI** | **DATE** |
| _(signature)_ | 9/19/06 | _(signature)_ | 9/19/06 |
| **DENNIS MARTIN** | **DATE** | **SCOTT PAVLIS** | **DATE** |
| _(signature)_ | 9/19/06 | _(signature)_ | 9/19/06 |
| **TIM J. SCULLY** | **DATE** | **FRANK RILEY** | **DATE** |

4

LABORERS' PENSION & WELFARE FUNDS

Printed Date 4/16/2008

# LABORERS' PENSION & WELFARE FUNDS
## CONTRACTOR PENALTY HISTORY

Contractor Number: 033938
Contractor Name: MIDWEST BRICK PAVING INC
Address: 18557 W STATE LINE RD
ANTIOCH IL, 600029344

Phone: (847) 838-6550
Status: Active
Outstanding Balance: $ 13,567.72

| Invoice # | Received Date | Report Month | Trans # | Penalty | Payment | Adjustment | Write Off | Welfare Penalty | Welfare Payment | Welfare Adjustment | Welfare Write Off | Pension Penalty | Pension Payment | Pension Adjustment | Pension Write Off |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 29338 | 12/07/2007 | 09/2007 | 1250300 | $ 3,034.39 | $ - | $ - | $ - | $ 1,771.73 | $ - | $ - | $ - | $ 1,262.66 | $ - | $ - | $ - |
| 29337 | 12/07/2007 | 08/2007 | 1250299 | $ 2,648.10 | $ - | $ - | $ - | $ 1,546.18 | $ - | $ - | $ - | $ 1,101.92 | $ - | $ - | $ - |
| 29342 | 12/07/2007 | 07/2007 | 1250298 | $ 513.24 | $ - | $ - | $ - | $ 299.67 | $ - | $ - | $ - | $ 213.57 | $ - | $ - | $ - |
| 29336 | 12/07/2007 | 06/2007 | 1250297 | $ 3,202.29 | $ - | $ - | $ - | $ 1,869.76 | $ - | $ - | $ - | $ 1,332.53 | $ - | $ - | $ - |
| 28609 | 08/03/2007 | 05/2007 | 1238546 | $ 3,776.10 | $ - | $ - | $ - | $ 2,290.22 | $ - | $ - | $ - | $ 1,485.88 | $ - | $ - | $ - |
| 28608 | 08/03/2007 | 04/2007 | 1238545 | $ 393.60 | $ - | $ - | $ - | $ 238.72 | $ - | $ - | $ - | $ 154.88 | $ - | $ - | $ - |
| | | | | $ 13,567.72 | $ - | $ - | $ - | $ 8,016.28 | $ - | $ - | $ - | $ 5,551.44 | $ - | $ - | $ - |

033938 - MIDWEST BRICK PAVING INC



EXHIBIT
C-5
tabbies

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, and JAMES S. )
JORGENSEN, Administrator of the Funds, )
                  Plaintiffs, )      Case No. 08 C 2565
    v. )
                     )      Judge St. Eve
MIDWEST BRICKPAVING, INC., an )
involuntarily dissolved Illinois corporation, and )
JOEL ELFERING individually and d/b/a )
MIDWEST BRICKPAVING, INC., )
                Defendants. )

## DECLARATION OF JERROD OLSZEWSKI

I, JERROD OLSZEWSKI, declare and state as follows:

1.     I am Funds Counsel for Plaintiffs Laborers' Pension Fund and Laborers'
Welfare Fund of the Health and Welfare Department of the Construction and General
Laborers' District Council of Chicago and Vicinity (the "Funds"), Plaintiffs in the above-
referenced action.  This Declaration is submitted in support of the Funds' Motion for
Judgment in Sum Certain against Defendants Midwest Brickpaving, Inc., an involuntarily
dissolved Illinois corporation, and Joel Elfering, individually and d/b/a Midwest
Brickpaving, Inc.

2.     Shareholders of the law firms of Allison, Slutsky & Kennedy, out-of-
house collection counsel for the Laborers' Funds, bill Funds at a rate of $175.00 per hour.
Affiant, as in-house counsel for Funds has first-hand knowledge that the hourly rate of
$175.00 has been found reasonable and has been awarded by many courts in collection



proceedings.

  3.  In house counsel for Funds, Patrick T. Wallace, received a Bachelor of

Arts Degree from the University of Illinois at Urbana- Champaign in 1992 and a Juris

Doctor Degree from the University of DePaul College of Law in 1995. He was admitted

to the bar of the State of Illinois in November 1995 and to the bar of the United States

District Court for the Northern District of Illinois in December 1995. He has also been

admitted to the bar of the United States District Court for the Central District of Illinois.

He was admitted to the Trial Bar of the Northern District of Illinois on September 20,

2000. From November 1995 to August 2000 he practiced labor and employment law as

an associate at the law firm of Katz, Friedman, Eagle, Eisenstein & Johnson (formerly

Katz, Friedman, Schur & Eagle). In September 2000, he became Funds Counsel for the

Laborers' Pension Fund and Laborers' Welfare Fund for the Health and Welfare

Department of the Construction and General Laborers' District Council of Chicago and

Vicinity.

  4.  Jerrod Olszewski, in-house counsel for Funds, received a Bachelor of Arts

Degree from Benedictine University in 1993 and a Juris Doctor Degree from the John

Marshall Law School in 2002. I was admitted to the bar of the State of Illinois in May,

2002, and to the bar of the United States District Court for the Northern District of

Illinois in May, 2002. From May, 2002 to December, 2004, I practiced labor and

employment law as an associate at the law firm of Katz, Friedman, Eagle, Eisenstein &

Johnson, former out-of-house counsel to the Laborers' Funds, with the majority of my

work being spent representing the Laborers' Funds. In December, 2004, I became in-

house counsel for the Funds.

5.      Based on the foregoing, $175.00 represents a fair and reasonable market rate for my and Patrick T. Wallace's in-house legal services to the Funds in this matter.

6.      Christina Krivanek, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from The Ohio State University in 2002 and a Juris Doctor Degree from the DePaul University College of Law in 2005. She was admitted to the bar of the state of Illinois in November 2005 and to the bar of the United States District Court for the Northern District of Illinois in January 2006. In January 2006, she became in-house counsel for the Laborers' Funds.

7.      Amy N. Carollo, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from Illinois State University in 2000, Masters of Science from University of Illinois at Chicago in 2002 and a Juris Doctor from Chicago-Kent College of Law in 2005. She was admitted to the bar of the State of Illinois in November of 2005 and to the bar of the United States  District Court for the Northern District in January 2006. In March 2006, she became in-house counsel for the Laborers' Funds.

8.      Based on the foregoing, $150.00 represents a fair and reasonable market rate for Christina Krivanek and Amy N. Carollo's in-house legal services to the Funds in this matter.

9.      Exhibit D-1 attached hereto sets forth the time expended to date by in-house counsel on this matter. As set forth in that Exhibit, we have expended 4.8 hours totaling $840.00 in attorneys' fees and $474.60 in costs totaling $1,314.60.

I, the undersigned, certify under penalty of perjury that the foregoing is true and correct.

Date: _6/5/08_                          _____

                                                    Jerrod Olszewski

3

Laborers Pension and Welfare Funds
11465 Cermak Rd.
Westchester, IL  60154

Invoice submitted to:
Midwest Brick

June 05, 2008

Invoice #10001

Professional Services

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 4/16/2008 JO | Meeting with M. Christopher re: new lawsuit referral | 0.50<br>175.00/hr | 87.50 |
| 4/17/2008 JO | corp search drafted letter to Defendant, Telephone conference with  District Council Dues Ayala re: delinquent status | 0.60<br>175.00/hr | 105.00 |
| 4/25/2008 JO | Telephone conference with M. Christopher re: status. | 0.10<br>175.00/hr | 17.50 |
| 5/5/2008 JO | Telephone conferences (3) with M. Christopher re: status and new lawsuit; drafted Complaint; LEXIS search Elfering; drafted District Council letter. | 1.90<br>175.00/hr | 332.50 |
| 5/15/2008 JO | Telephone conference with  M. Christopher re: status | 0.10<br>175.00/hr | 17.50 |
| 6/4/2008 JO | Telephone conference with  M. christopher re: Motion for Entry of Default Judgment | 0.10<br>175.00/hr | 17.50 |
| 6/5/2008 JO | Drafted Motion for Entry of Default Judgment, affidavit of Christopher, declaration of attorney fees, order, Telephone conference with  M. Christopher | 1.50<br>175.00/hr | 262.50 |
| | For professional services rendered | 4.80 | $840.00 |



Midwest Brick                                                    Page    2

       Additional Charges :

|  |  | Amount |
|---|---|---|
| 5/2/2008 | Photocopies of Complaint, etc. | 9.60 |
|  | Filing fee. | 350.00 |
| 5/13/2008 | JAS-Service of complaint and summons on both Defendants | 115.00 |
|  | Total additional charges | $474.60 |
|  | Total amount of this bill | $1,314.60 |
|  | Balance due | $1,314.60 |

### Timekeeper Summary

| Name | Hours | Rate | Amount |
|---|---|---|---|
| Jerrod Olszewski | 4.80 | 175.00 | $840.00 |

6/5/2008                           Laborers Pension and Welfare Funds
11:19 AM                           Billing Worksheet Invoice Summary                              Page    1

| Client<br>Last bill<br>Last charge | Billable:<br>Fees<br>Costs<br>Hours | Unbillable:<br>Fees<br>Costs<br>Hours | Interest<br>Fin charge<br>Tax fees<br>Tax costs | Payments<br>Credits<br>Wrt offs<br>Refunds | Prior bal<br>New charges<br>New A/R<br>New bal |
|---|---|---|---|---|---|
| Midwest Brick | | | | | |
| | 840.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6/5/2008 | 474.60 | 0.00 | 0.00 | 0.00 | 1314.60 |
| 10001 | 4.80 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | 0.00 | 0.00 | 1314.60 |
| Grand Total | 840.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 474.60 | 0.00 | 0.00 | 0.00 | 1314.60 |
| | 4.80 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | 0.00 | 0.00 | 1314.60 |

## CERTIFICATE OF SERVICE

The undersigned attorney of record certifies that he caused a copy of the foregoing Motion for Entry of Default Judgment in Sum Certain to be served upon the individuals listed below via U.S. Mail, postage pre-paid, on this 5th day of June, 2008.

Midwest Brickpaving, Inc.
c/o Joel Elfering, President
18557 State Line Rd.
Antioch, IL  60002

Joel Elfering, individually
18557 State Line Rd.
Antioch, IL  60002

/s/ Jerrod Olszewski

4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND and | ) | |
| LABORERS' WELFARE FUND OF THE | ) | |
| HEALTH AND WELFARE DEPARTMENT | ) | |
| OF THE CONSTRUCTION AND GENERAL | ) | |
| LABORERS' DISTRICT COUNCIL OF | ) | |
| CHICAGO AND VICINITY, and JAMES S. | ) | |
| JORGENSEN, Administrator of the Funds, | ) | |
| Plaintiffs, | ) | Case No. 08 C 2565 |
| v. | ) | |
| | ) | Judge St. Eve |
| MIDWEST BRICKPAVING, INC., an | ) | |
| involuntarily dissolved Illinois corporation, and | ) | |
| JOEL ELFERING individually and d/b/a | ) | |
| MIDWEST BRICKPAVING, INC., | ) | |
| Defendants. | ) | |

## JUDGMENT ORDER

This matter having come to be heard on the Motion of Plaintiffs Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and James S. Jorgensen, Administrator of the Funds, (collectively "Funds"), for an Entry of Default Judgment against Defendants Midwest Brickpaving, Inc., an involuntarily dissolved Illinois corporation, and Joel Elfering, individually and d/b/a Midwest Brickpaving, Inc., due notice having been given, and the Court being fully advised in the premises,

IT IS HEREBY ORDERED THAT:

1.      Default judgment is hereby entered in favor of Funds and against Defendants Midwest Brickpaving, Inc., an involuntarily dissolved Illinois corporation, and Joel Elfering, individually and d/b/a Midwest Brickpaving, Inc., joint and severally in the amount of $14,882.32 as follows:

      A.      $13,567.72 in liquidated damages for late paid April through

September, 2007 benefits reports; and

      B.      $1,314.60 representing attorneys' fees and costs;

    2.      Defendants are ordered to obtain a surety bond in accordance with the collective bargaining agreement.

    3.      Defendant is to pay post-judgment interest on all amounts set forth herein until they are paid to the Funds.

ENTER:

_____

The Honorable Amy St. Eve
United States District Court Judge

Dated:_____

2